IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GILCHRIST TIMBER COMPANY,

    Plaintiff,

v.                                             CASE NO. 1:88-cv-10172-MP-AK

ITT RAYONIER INCORPORATED,
NATURAL RESOURCE PLANNING SERVICES INC,
ANDREW V SANTANGINI, JR,

    Defendants.

_____/

## **O R D E R**

This matter is before the Court on the following motions. The parties have filed responses, and a hearing was held (see docket entry at 478):

- <u>Docs. 455 & 459</u>, Motion (with Memorandum) for entry of final judgment on jury verdict including prejudgment interest and costs by Plaintiff Gilchrist Timber Company.
- <u>Doc. 457</u>, Motion for Taxation of costs by Plaintiff Gilchrist Timber Company
- <u>Doc 460</u>, Motion for entry of final judgment on jury verdict including costs, by Third-Party Defendant Natural Resource Planning Services
- <u>Doc. 461</u>, Motion to Tax Costs, by Third-Party Defendant Natural Resource Planning Services

The major issue in all these motions is from what point in time should prejudgment or post-judgment interest accrue, if at all. The case began when what is now Gilchrist Timber[1] negotiated in 1985 with what is now ITT Rayonier to purchase thousands of acres of land in Gilchrist County. During the negotiations ITT Rayonier forwarded to Gilchrist Timber an appraisal of the land done by Third-Party Defendants Natural Resource Planning Services ("NRPS") and Mr. Santangini. The appraisal had previously been prepared by NRPS and Mr.

---

[1] For ease of reference, this Order will refer to the parties by their present names although the names are intended to refer to predecessors in interest as appropriate.

Santangini for internal use by ITT Rayonier, and not in connection with a proposed sale to Gilchrist Timber or anyone else.  The appraisal wrongly stated that all 22,000 acres of the property was zoned for a certain use, when in fact 16,000 acres of the property were actually zoned for a much more restricted use.  Gilchrist Timber relied on the appraisal and did not conduct their own appraisal.  The sale of the land was completed on October 24, 1985.

Later, in 1987, Gilchrist Timber came to realize that the property was not zoned as the appraisal had led it to believe, and determined that the property was likely worth less than they had previously believed.  Gilchrist Timber filed suit in federal court, invoking the Court's diversity jurisdiction and claiming fraudulent and negligent misrepresentation.  Defendants ITT Rayonier then filed a third-party action against the appraisers, NRPS and Mr. Santangini, seeking to hold them accountable because they had supplied the erroneous appraisal in question.

The case proceeded to a jury trial in January 1992.  During the trial, the Court directed a verdict for defendant ITT Rayonier on the fraudulent misrepresentation claim, and submitted the case to the jury only on the negligent misrepresentation claim.  The Court, following its view of Florida law at the time, declined to charge the jury on ITT Rayonier's defense of comparative negligence.  Moreover, in its jury instructions, the Court defined damages as follows:

> Now you should consider the following elements of damages that you find proved by a preponderance of the evidence and no other; that is, the difference, if any, between what you find to have been the value of the subject real property as of the date of the transaction, which was October 24, 1985, had the entire tract been zoned A-1 agricultural district under the Gilchrist County, Florida, zoning ordinances, and what you find to have been the value of the subject real property on the date of the transaction, which was October 24, 1985, as it was in reality zoned under the Gilchrist County, Florida, zoning ordinances, which was that approximately 6,000 acres were zoned A-1, agricultural, and approximately 16,000 acres zoned P-1, preservation.

(Volume 8, p. 114, of Transcript of Jury Trial, January 31, 1992).  Following deliberations, the

jury returned a verdict for Plaintiffs in the amount of $1,676,500. With regard to the claims by ITT Rayonier against the appraisers (NRPS and Mr. Santangini), the Court required ITT Rayonier to elect a remedy of contribution or of indemnity, but not both. Under this direction, ITT Rayonier elect to proceed under the indemnity theory. The jury found against ITT Rayonier on the indemnity claim against the appraisers.

A judgment on the 1992 Jury Verdict was entered on February 3, 1992, which did not include an award of prejudgment interest but which did authorize the accrual of post-judgment interest at the statutory rate of 4.02 %. (doc. 233). Thereafter, on February 10, 1992, ITT Rayonier moved for Judgment as a Matter of Law pursuant to Rule 50, Fed.R.Civ.P., or alternatively for a new trial. Likewise, on February 17, 1992 Gilchrist Timber moved to alter or amend the judgment pursuant to Rule 59(e) to include prejudgment interest from October 24, 1985 through the date of the judgment. On November 5, 1994, the Court granted ITT Rayonier's motion for JNOV, and directed entry of judgment for ITT Rayonier.

Gilchrist Timber then appealed the JNOV to the U.S. Court of Appeals for the Eleventh Circuit. Before proceeding, the Eleventh Circuit panel found no controlling authority on a certain issue from the Florida courts, and therefore certified the following question to the Florida Supreme Court:

> Whether a party to a transaction who transmits false information which that party did not know was false, may be held liable for negligent misrepresentation when the recipient of the information relied on the information's truthfulness, despite the fact that an investigation by the recipient would have revealed the falsity of the information.

The Florida Supreme Court undertook to respond, but could only "answer the question with a qualified affirmative." <u>Gilchrist Timber Co. v. ITT Rayonier, Inc.</u>, 696 So.2d 334, 335 (Fla.

1997). That is, the Supreme Court held as follows:

> For the reasons expressed, we answer the question with a qualified affirmative, finding that the party who negligently transmitted the false information may be held liable when the recipient is able to establish a negligent misrepresentation cause of action as set forth in the RESTATEMENT (SECOND) OF TORTS § 552 (1977). We also conclude that the doctrine of comparative negligence applies to an action for negligent misrepresentation.

Id. After the Florida Supreme Court issued its opinion holding that comparative negligence was a defense, the Eleventh Circuit issued an opinion reversing the JNOV, and remanding the case for a jury trial on the question of the Plaintiffs' comparative negligence.

At that point, however, the question still remained as to whether the potential comparative negligence of the third-party defendant appraisers -- who had prevailed on defendant ITT Rayonier's indemnity claim against them in 1992 -- should be considered in the jury trial mandated by the Eleventh Circuit, since the 1997 mandate technically only applied to Gilchrist Timber and ITT Rayonier.

In a second opinion, however, ITT Rayonier v. Natural Resources Planning Serv., 99-13955 (11th Cir., July 18, 2001), the Eleventh Circuit provided a partial answer. The panel held that the undersigned had erred in requiring ITT Rayonier to choose either an indemnity or contribution theory against the appraisers at the 1992 trial and intimated that the contribution claim of ITT Rayonier might be dealt with under Florida law in a manner similar to comparative negligence. The Eleventh Circuit remanded for further consideration, but stopped short of specifying exactly what procedure the Court should follow to consider the contribution claim. The parties then filed a series of motions addressing whether the potential negligence of the appraisers should be considered in the same trial as the one covering the comparative negligence of the plaintiff and defendant.

*Case No: 1:88-cv-10172-MP-AK*

Eventually, after considering the arguments of the parties, the mandates of the Eleventh Circuit, Florida law, and the considerations of judicial economy, the Court concluded that the potential comparative negligence of the appraisers should be considered along with the potential comparative negligence of the plaintiff buyer and the defendant seller, in a single trial. (Doc. 405). Accordingly, on August 30, 2004, the case was retried, with the sole issue being the relative negligence of Gilchrist Timber, ITT Rayonier, NRPS and Mr. Santangini. Importantly, the issue of the amount of loss was not re-considered by the second jury. The loss figure from the 1992 jury verdict was used. On September 10, 2004, a jury verdict was returned, finding that ITT Rayonier was 67% at fault, that Gilchrist Timber Co. was 33% at fault, that NRPS was 0% at fault, and that Mr. Santangini was 0% at fault.

The plaintiff now moves to have a new final judgment entered, and moves that this final judgment include prejudgment interest accruing from October 24, 1985, the date of the transaction in question, until September 15, 2004, which is five days after the second jury verdict, and probably was simply the day the plaintiff prepared the motion for entry of judgment. (doc. 759, p. 6). The plaintiff based its reasoning on the jury instruction set out above, which required the jury to calculate the lost benefit of the bargain as of October 24, 1985. The plaintiff argues:

> The Court instructed the jury during the first trial by using Defendant/Third Party's Requested Instruction No. 17. This instruction required the jury to use the date Rayonier conveyed the land to Gilchrist Timber Company, October 24, 1985, as the date for determination of damages. That is the date of loss from which prejudgment interest should run.

The defendant ITT Rayonier objects, arguing that Florida law, even after the <u>Argonaut</u> case relied upon by the plaintiff, does not allow prejudgment interest in tort cases except for a

narrow exception when a "verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses" as of a date certain. Here, defendant points out that the plaintiff sought, and the court instructed the jury regarding, "benefit of the bargain" damages, not out-of-pocket loss. Also, defendant questions whether post-judgment rather than pre-judgment interest should accrue after the date of the February 1992 verdict, since the appeal eventually reinstated that judgment. Finally, the defendant argues that the Court has discretion under Florida law to tailor prejudgment interest in accordance with principles of fairness, and urges that fairness dictates that prejudgment interest be denied or reduced in this case.

As the above discussion indicates, the following dates are potentially relevant to when interest, either post- or pre-judgment may begin to accrue in this case:

- October 24, 1985 – date the transaction at issue was completed
- January 31, 1992 – date of the original jury verdict
- February 3, 1992 - date of original judgment on original jury verdict
- September 10, 2004 - date of the 2004 jury verdict
- today, or shortly thereafter - the date of the final judgment based on the 2004 verdict.

Having considered the arguments of the parties and Florida law, the Court concludes that no prejudgment interest shall be awarded in this case, and post-judgment interest in the amount of 4.02% per annum shall be awarded, accruing from January 31, 1992, the date of the original jury verdict.

Both parties agree that Florida law applies to the issue of prejudgment and post-judgment interest. See also, National R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc., 286 F.3d 1233 (11th Cir. 2002) (applying Florida law to prejudgment interest question). Both also agree that this is a tort case, not a contract case. Under Florida law, it is clearly established that prejudgment interest is available in contract cases from the date performance was due under the

contract. In <u>Lumbermens Mut. Cas. Co. v. Percefull</u>, 653 So.2d 389 (Fla. 1995), for example, the Florida Supreme observed that the general rule in Florida is that prejudgment interest is allowed for actions based on contract from the date the debt is due. The <u>Lumbermens</u> Court also set out the following quote with approval:

> The fact that there is an honest and bona-fide dispute as to whether the debt is actually due has no bearing on the question. The rule is that if it is finally determined that the debt was due, the person to whom it was due is entitled not only to the payment of the principal of the debt but to interest at the lawful rate from the due date thereof.

<u>Id.</u> at 390 (*quoting* <u>Parker v. Brinson Construction Co.</u>, 78 So.2d 873, 874 (Fla. 1955)). In other words, in contract actions, although the damages are only finally fixed and determined on the date of the verdict, they are considered liquidated as of the date of the breach. Prejudgment interest can therefore run from the earlier date.

In contrast, tort claims are generally excepted from the rule allowing prejudgment interest because tort damages are considered generally too speculative to liquidate before final judgment. <u>National R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc.</u>, 286 F.3d 1233 (11th Cir. 2002) (discussing Florida law). However, the Florida Supreme Court has provided a limited exception to the foregoing rule by allowing plaintiffs to collect prejudgment interest in tort actions when their damages represent (1) an ascertainable "actual out-of-pocket loss" (2) at a fixed date of loss prior to the entry of judgment. <u>Argonaut Ins. Co. v. May Plumbing Co.</u>, 474 So.2d 212 (Fla. 1985). In <u>Argonaut</u>, an insurer paid out a judgment to an apartment complex owner based on a fire at the complex alleged caused by a plumbing company. The insurer then sued the plumbing company under subrogation and prevailed. The insurer then sought prejudgment interest accruing, not from the time of the verdict or judgment, but from the

earlier time of its payment to the insured apartment complex.

The trial court allowed the award, but the Fourth District reversed, holding that the issue of the possible comparative negligence of the apartment complex had made the award of damages uncertain and, thus, unliquidated. However, the Florida Supreme Court quashed the Fourth District's decision and held: "[A] claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date." Id. at 214 (quoting with approval from Bergen Brunswig Corporation v. State, Department of Health and Rehabilitative Services, 415 So.2d 765 (Fla. 1st DCA 1982)). The Argonaut court explained: "[W]hen a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." Argonaut, 474 So. 2d at 215.

By carefully circumscribing its holding in Argonaut, the Florida Supreme Court expressly limited the entitlement to prejudgment interest to those instances in which a verdict has the effect of fixing damages as of a "prior date" and when the losses are an "out-of-pocket and pecuniary loss[]." Florida courts have consistently reinforced this limitation. For instance, in Alvarado v. Rice, 614 So. 2d 498 (Fla. 1993), the court addressed whether a plaintiff was entitled to prejudgment interest on an award of past medical expenses in a personal injury action. The plaintiff had been billed for the expenses but neither paid them nor was charged interest on them. The court rejected the plaintiff's request for prejudgment interest from the time of billing, holding that Alvarado had not "suffered the loss of a vested property right," as she had not used private funds to pay the medical bills she had incurred and was not being charged interest. Of particular interest, the court commented that consistent with Argonaut's out-of-pocket pecuniary

loss requirement "[t]o date, cases recognizing a right to prejudgment interest have all involved the loss of a vested property right." Id. at 499. This ruling is consistent with Argonaut's out-of-pocket pecuniary loss requirement.

More recently, in Lumbermens Mut. Cas. Co. v. Percefull, 653 So. 2d 389 (Fla. 1995), the court reaffirmed the general rule regarding the award of prejudgment interest in breach of contract cases: "[I]f it is finally determined that the debt was due, the person to whom it was due is entitled not only to the payment of the principal of the debt, but to interest at the lawful rate from the due date thereof." However, in commenting on Alvarado, the court reaffirmed its stance on awards of prejudgment interest for tort claims: "[T]ort claims are generally excepted from the rule allowing prejudgment interest, primarily because tort damages are generally too speculative to liquidate before final judgment."

The latest pronouncement on this issue occurs in Amerace Corp. v. Stallings, 823 So.2d 110, 112-13 (Fla. 2002), where the Florida Supreme Court, albeit in dicta, summarized its view of the state of the law regarding prejudgment interest in tort cases in Florida:

> Historically, plaintiffs in personal injury cases have not been entitled to prejudgment interest. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985); Zorn v. Britton, 120 Fla. 304, 162 So. 879 (1935); Farrelly v. Heuacker, 118 Fla. 340, 159 So. 24 (1935). As we explained in Lumbermens Mutual Casualty Co. v. Percefull, 653 So.2d 389, 390 (Fla.1995), damages in personal injury cases are too speculative to liquidate before final judgment. The only exception to this rule is if the plaintiff can establish that he or she has suffered the loss of a vested property right. See Alvarado v. Rice, 614 So.2d 498 (Fla.1993).

Under the above cases, plaintiff's claim for prejudgment interest for the period from October 24, 1985 (date of the transaction) to February 3, 1992 (date of the judgment on the original jury verdict) should fail. As the defendant deftly points out, plaintiff was contemplating

and implementing various strategies to sell the land all throughout the time period after 1985 and actually made a profit from the transactions. Thus, it is extremely difficult to pinpoint when the loss of increased profits occurred, and, like in <u>Alvarado</u>, it cannot be said that the plaintiff suffered the loss of a vested property right at the moment of the 1985 transaction. This is, therefore, the classic case where the plaintiff has not suffered "out-of-pocket, pecuniary losses" that can be quantified and set for a date certain. Instead, the damages are the type that are "too speculative to liquidate before final judgment." <u>See Amerace Corp. v. Stallings</u>, 823 So.2d at 112-13. Accordingly, prejudgment interest cannot be awarded for the time period prior to the 1992 verdict.

      The plaintiff also seeks "prejudgment interest" for the period after the 1992 judgment up until September 15, 2004. As noted above, why the plaintiff chose that specific date is not explained, but it seems likely it was the putative date of a final judgment incorporating the 2004 trial results. In other words, the Court assumes that plaintiff seeks prejudgment interest from the date of the transaction, October 24, 1985, to the eventual date that a revised final judgment is entered. The defendant, arguing in the alternative to its main argument, suggests that the "judgment" upon which pre- or post-judgment interest should be based is the February 3, 1992, judgment. That is, the defendant argues that only post-judgment interest can run from February 3, 1992, at the lower rate of 4.02%. Alternatively, however, defendant also urges the court to reject all interest prior to whenever the Court enters its judgment incorporating the results of the 2004 trial.

      Upon a review of Florida law, the Court rejects the plaintiff's argument, agrees in large part with one of defendant's arguments, and holds that post-judgment interest should accrue from

the January 31, 1992 verdict, at the rate of 4.02%. The Court's analysis begins with Fla.R.App.P. Rule 9.340(c), which provides as follows:

> **(c) Entry of Money Judgment**. If a judgment of reversal is entered that requires the entry of a money judgment on a verdict, the mandate shall be deemed to require such money judgment to be entered as of the date of the verdict.

Florida courts have applied this rule to mean that post-judgment interest runs from the date of the original jury verdict rather than the date of an amended final judgment. As our sister court stated expertly in <u>Calder Race Course, Inc. v. Illinois Union Ins. Co.</u>, 714 F.Supp. 1183 (S.D.Fla.,1989)

> Under Florida law, when a verdict is reinstated on appeal, a plaintiff is entitled to post judgment interest from the date of the verdict. "When a judgment of reversal is entered which requires the entry of a money judgment on a verdict, the mandate shall be deemed to require such money judgment to be entered as of the date of the verdict." Fla.R.App.P. 9.340(c). Since the supreme court reinstated the jury verdict and directed entry of a money judgment, the money judgment was entered as of the date of the jury verdict and interest post judgment began to run on [the date of the verdict].

Here, the Eleventh Circuit mandate required the undersigned to enter a money judgment on the jury's verdict, after the undersigned apportioned damages. While it could be argued that Rule 9.340(c) and cases like <u>Calder</u> are not precisely on point, because after the mandate of the appellate court in the instant case more judicial action in the form of the second jury trial was necessary, the Court finds that to be a distinction without effect. The purposes behind Rule 9.340(c) justify a conclusion that when a final revised judgment by this Court effectively reinstates an original jury verdict, but merely reapportions the amount of fault, the date of the judgment should be considered the date of the original verdict, and post-judgment interest should run from that date. This procedure has been favored by various Florida courts. <u>See, e.g.</u>, <u>Green v. Rety</u>, 616 So.2d 433 (Fla. 1993) (affirming the district court's accrual of post-judgment

interest from the date of the original verdict in case where final judgment was later entered after plaintiff eventually accepted remittitur); St. Cloud Utilities v. Moore, 355 So.2d 446 (Fla.App. 1978) ("interest should run from the date of the original judgment entered. The required mandate from this court was but a modification of an existing money judgment for the same amount by way of reapportionment among the several defendants.").

Finally, it should be noted that the above decision comports with the Court's view of equity and fairness. With regard to the 67% of loss attributable to defendant, "[t]he delay in entering the ultimate final judgment was not caused by the plaintiff, but by the length of the appellate process itself. Thus, the rule of appellate procedure, providing that interest be computed from the date of the verdict, prevails." Hyundai Motor Co. v. Ferayorni, 876 So.2d 680, 682 (Fla.App. 4 Dist.,2004) (citing Fla. R.App. P. 9.340(c)). Based on the above discussion, the plaintiff shall be entitled to no prejudgment interest in this case, but shall be entitled to post-judgment interest, accruing at the rate of 4.02% and starting on the day of the jury's original verdict, January 31, 1992.

With regard to the motions for taxation of costs, the Court notes that 28 U.S.C. § 1920, et seq. allow for the taxation of only certain costs. Specifically, "A judge or clerk of any court of the United States may tax as costs the following":

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Certain types of expenses which are therefore excluded are expert witness fees for experts who are not court appointed, transcripts that are not "necessarily obtained for use in the case", etc. In the motions, the movants do not specify the statutory basis for any of their requests, frequently lump diverse expenses into one entry, and include many expenses that are obviously not allowed to be taxed. Accordingly, the motions for taxation of costs are denied in their entirety, but without prejudice to plaintiff and third-party defendants filing renewed motions for taxation of costs that (1) set out each claimed cost individually and with specificity, (2) make specific reference for each claimed cost to the statutory provision which allows the court to tax said cost; and (3) set out for each claimed expense how the expense satisfies the statutory provision involved.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Doc. 455, Motion for entry of final judgment on jury verdict including prejudgment interest and costs by Plaintiff Gilchrist Timber Company is granted in part to the following extent. The Clerk is directed to enter a final judgment against defendant ITT Rayonier in the amount of 67% of $1,676,500. The judgment should also reflect that post-judgment interest at the rate of 4.02% shall accrue on the judgment, nunc pro tunc to January 31, 1992.

2. Doc. 457, the Motion for Taxation of costs by Plaintiff Gilchrist Timber Company is denied without prejudice to the filing of a revised motion as discussed above by Friday, October 21, 2005.

3. Doc 460, Motion for entry of final judgment on jury verdict including costs, by Third-Party Defendant Natural Resource Planning Services is granted to the extent that a final judgment in favor of Third-party defendant shall be entered but denied to the extent that costs will not be taxed until a revised motion to tax costs is entered pursuant to the ruling below in paragraph 4.

4. Doc. 461, Motion to Tax Costs, by Third-Party Defendant Natural Resource Planning Services is denied without prejudice to the filing of a revised motion as discussed above by Friday, October 21, 2005.

**DONE AND ORDERED** this  *28th*   day of September, 2005

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge